IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| SCOTT R. WOLFE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>　　　　　Defendant. | CV 09-166-BLG-RFC-CSO<br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Scott R. Wolfe ("Wolfe") brings this action against BNSF Railway Company ("BNSF") alleging he was illegally dismissed from employment due to BNSF's negligence and mismanagement. *See Court Doc. 69 at 11 (Amended Complaint).* Currently pending is BNSF's motion for summary judgment. *Court Doc. 47.* Wolfe has withdrawn his motion for partial summary judgment. *Court Docs. 44, 65.*

The parties have agreed that the filing of the amended complaint does not require re-briefing the pending motion for summary judgment. Accordingly, the Court considers below BNSF's motion as it applies to the single claim in the Amended Complaint.

## I. BACKGROUND

Wolfe's employment with BNSF began in 1981. *Court Doc. 15 (Court's Scheduling Order) at 3.* Wolfe is a member of the Brotherhood of Maintenance of Way Employees union ("Union"). His employment is governed by a Collective Bargaining Agreement ("CBA") which incorporates additional terms contained in a Memorandum of Understanding ("MOU") between BNSF and the Union. *See Court Docs. 49-7 (relevant portion of CBA) & 49-9 at 71-81 (MOU).*

On December 18, 2008, while working as a relief track inspector, Wolfe's vehicle collided with a train. He does not claim to have suffered any personal injuries. *Court Doc. 15 at 3; Court Doc. 49 at 2, ¶ 1; Court Doc. 4 at ¶¶ 16-17; Court Doc. 56-13 (Depo. Scott Wolfe) at 19 (162:20 - 166:12).*

Pursuant to Rule 40 of the CBA, BNSF conducted two formal investigations into possible rule violations by Wolfe. *Court Docs. 49-8 & 49-9 (records of formal investigations).* One investigation concerned Wolfe's alleged failure to have Main Track Authority at the time of the accident. *Court Doc. 49-9 at 67.* The second investigation concerned

Wolfe's allegedly intentional misuse of company property by failing to activate the Hy-rail Limits Compliance System ("HLCS") on his vehicle. *Court Doc. 49-8 at 67.*

Wolfe and his Union representative objected to both investigative proceedings. In the first investigation, he and his Union representative argued that the incident should not be subject to a formal investigation under Rule 40 of the CBA, but instead should be handled under the MOU's "Alternative Handling Program." *See Court Doc. 49-9 at 5:5-25.* Based on Rule 40, Wolfe's Union representative also objected that the investigation was unfair and "most importantly [violated] the contractual rights of Mr. Wolfe." *Id. at 13.* In the second investigation, Wolfe's Union representative again objected to the proceedings under Rule 40 of the CBA. *Court Doc. 49-8 at 6-9.* He also objected that the second investigation subjected Wolfe to double-jeopardy. *Court Doc. 49-8 at 9:4-21.* He continued to object regarding the absence of witnesses at the investigation and concluded that the proceeding was not fair and impartial as required by Rule 40 of the CBA. *Court Doc. 49-9 at 9-11.*

Despite these objections, BNSF gave Wolfe a 30-day level-S

suspension for his failure to use the HLCS, and dismissed him for his failure to have main track authority. *See Court Doc. 49 at 6, ¶ 12; Court Doc. 56-13 at 11 (130:14-22).* Wolfe has appealed his dismissal as provided by the CBA and is awaiting arbitration. *Court Docs. 49-7 at 3-4, 56-12 at 4 (10: 19 - 12:3).*

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

"A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id.*

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party may not rely solely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11.

When the material facts are undisputed and resolution of a motion for summary judgment turns on a question of law, the court may determine which party's position is correct as a matter of law. If there are no genuine issues of fact pertaining to a claim, the movant's burden is not an evidentiary one – because the material facts are not in dispute– but rather the court is left with the obligation to resolve the legal dispute between the parties as a matter of law. *Gulf Ins. Co. v. First Bank*, 2009 WL 1953444 at *2 (E.D. Cal. 2009) (citing *Asuncion v. Dist. Dir. Of U.S. Immigration & Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970)).

### III. PARTIES' ARGUMENTS

BNSF contends that Wolfe's claim for negligent mismanagement pursuant to § 39-2-703, MCA, is preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. BNSF argues that consideration of Wolfe's § 39-2-703, MCA, claim, as applied to the allegations presented here, requires interpretation and application of the CBA, and thus is preempted. *Court Doc. 48 at 9-15*.

BNSF also argues that punitive damages are improper here.

*Court Doc. 48 at 17.* BNSF argues that, because summary judgment should be granted with respect to Wolfe's substantive claims, there is no basis for the imposition of punitive damages. *Court Doc. 48 at 17.* BNSF also contends that even if Wolfe's claim were to survive there is no basis for punitive damages because Wolfe can establish neither actual malice nor actual fraud as required under Montana law. *Court Doc. 48 at 18-21.*

In response, Wolfe contends that his negligent mismanagement claim is not preempted because Montana law provides an independent cause of action for mismanagement. *Court Doc. 52 at 3.* Wolfe contends that his negligent mismanagement claim does not require interpretation of the CBA and is not preempted by the RLA. *Court Doc. 52 at 3-14.* Wolfe argues that substantial evidence of negligence, mismanagement, and "omission and commission" exists. *Court Doc. 52 at 14.* Accordingly, he asserts that his claim under § 39-2-709, MCA, which is fact intensive, should not be subject to summary judgment. *Court Doc. 52 at 14-18.*

Wolfe also argues that "summary judgment is inappropriate with

respect to claims of punitive damages, malice, false representations and willful wrongs by the railroad." *Court Doc. 52 at 18*. Wolfe contends he is entitled to present evidence of "indifference, conscious or intentional disregard" of his rights and the high probability of injury to him. *Court Doc. 52 at 19*. Additionally, Wolfe argues that false evidence as to the value of the property damage is sufficient to establish actual fraud. *Court Doc. 52 at 19*. Accordingly, Wolfe contends summary judgment is inappropriate. *Court Doc. 52 at 19-20*.

## IV. DISCUSSION

### 1. Railway Labor Act Preemption

Congress' purpose in passing the RLA was "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994). To this end, the RLA created a "mandatory arbitral mechanism for 'prompt and orderly settlement' of two classes of disputes [ – ]" major and minor. *Id.* (quoting 45 U.S.C. § 151a). "Major" disputes relate to the formation of collective bargaining agreements, or efforts to obtain them, while "minor" disputes are those

involving "interpretation or application of existing labor agreements." *Id*. at 256 (citing *Consol. Rail Corp. (Conrail) v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)). Major disputes seek to create contractual rights, minor dispute to enforce them. *Id. at 253.*

This case does not involve a major dispute. Here, the Court must determine whether Wolfe's negligent mismanagement claim is a minor dispute under the RLA and thus preempted. The state statute creating a cause of action for "mismanagement," M.C.A. § 39-2-703, is interpreted under state law but the issue of preemption is a question of federal law. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985). The mandatory arbitration mechanism for minor disputes under the RLA creates the preemption, which requires arbitration of claims that purport to be based on state common law or statutory grounds, but in substance are "minor disputes" under the RLA. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323-24 (1972).

The RLA does not completely preempt wrongful discharge or other state law claims. In *Hawaiian Airlines, supra,* the United States

Supreme Court took a narrow view of RLA preemption, holding that "a state law cause of action is not preempted by the RLA if it involves rights that exist independent of the collective bargaining agreement." 512 U.S. at 260. These state rights can include protections against wrongful termination. *Id*. at 250, 266. "Pre-emption of employment standards within the traditional police power of the State should not be lightly inferred." *Id.* at 252.

When "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id*. at 261, n.8 (*quoting Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). In *Hawaiian Airlines,* the Court explained:

> [E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement ....

*Id*. at 262 (quoting and adopting standard of *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-10 (1988)).

The Court also made clear, however, that "where the resolution of

a state-law claim depends on an interpretation of the CBA, the claim is pre-empted." *Id*. at 261. It is the substance and not the characterization of the claim that determines whether it is preempted. The Supreme Court has articulated two general instances when preemption may occur: (1) when the "claims [are] founded directly on rights created by collective bargaining agreements;" and (2) "where the right is created by state law ... [but the application of state law] requires the interpretation of a collective bargaining agreement." *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1992) (quoting *Lingle*, 486 U.S. at 411-12) (quoted in *Ware v. Burlington Northern Santa Fe Ry.*, 2006 WL 2741897 at *3 (E.D. Cal. Dec. 18, 2006)).

Under these guidelines, the Court concludes that Wolfe's claim for negligent mismanagement asserts a right created by and based on state law but requires interpretation of the CBA – making it a minor dispute under the RLA. Wolfe alleges that BNSF "negligently or willfully mismanaged its investigation relating to responsibility for the described collision, and negligently and/or willfully mismanaged the consequent termination of Plaintiff." *Court Doc. 69 at* ¶ 26B. Wolfe

takes issue with the investigation leading to his dismissal, including charges of "mismanage[ment of] railroad operations resulting in the train/truck collision," "faulty evidence, negligent investigation, extreme exaggerations, ... false testimony," "altered evidence, and other wrongdoing to dismiss an employee otherwise undeserving of such treatment...." *Id. at ¶¶ 26A, 26C, 26D*. He seeks lost wages and benefits, general damages, and punitive damages – all stemming from termination of his employment.

Thus, the bases for Wolfe's claim stem from investigations conducted pursuant to the CBA and the proceedings that resulted in Wolfe's termination. As discussed in detail below, to rule on Wolfe's claims the Court necessarily would have to interpret and apply the CBA.

First, Wolfe previously alleged that BNSF artificially inflated the damage amount to disqualify him from Alternative Handling ("a non-punitive response to rule violations that includes training and other non-disciplinary measures") and to allow his termination under the CBA. *Court Doc. 50-2 at 73*. Wolfe has now withdrawn this claim,

giving notice as follows: "Plaintiff, at trial, will not introduce evidence as to the value of the truck nor will plaintiff claim exaggeration of the truck value as a fact in establishing the case for mismanagement." *Court Doc. 65 at 1-2.* Although Wolfe apparently no longer intends to argue that he was entitled to Alternative Handling under the MOU, the Court notes that, if the parties cannot agree, the MOU provides the mechanism for determining whether an employee is eligible for Alternative Handling. *Court Doc. 49-9 at 80.*

Second, Wolfe argues that BNSF's mismanagement included BNSF's failure to consider the negligence of the dispatcher and failure to produce the complete dispatch tape at the disciplinary hearing. Once it was determined that Wolfe was ineligible for Alternative Handling, his discipline was governed by Rule 40 of the CBA. *See Court Doc. 50-2 at 93.* This rule governs "Investigations and Appeals" and provides: "An employe[e] in service sixty (60) days or more will not be disciplined or dismissed until after a fair and impartial investigation has been held." *Court Doc. 50-2 at 93 (Rule 40A.).* Rule 40 then defines the scope and nature of the investigative process. It describes when the

investigation must take place, where it must take place, the notice that must be given to the employee and to the appropriate local union representative, information regarding representation, information regarding the presence of witnesses, and information regarding the investigation transcript. *Court Doc. 49-7 at 2 (Rule 40.A - G).* It requires that the employee and his representative be furnished a copy of the transcript of investigation, including all statements, reports, and information made a matter of record. A purpose of the investigation is to determine whether the employee has been "unjustly disciplined or dismissed." *Id.*

Wolfe's Amended Complaint itself makes clear that his claims cannot be decided without applying and interpreting the CBA. He complains that he should not have been dismissed because he was given faulty equipment and because the dispatcher erred. *Court Doc. 69 at 3-7.* But he acknowledged that his dismissal occurred because BNSF "charged Plaintiff with a rule violation" and "[i]n order to do so, BNSF has to hold a hearing under the labor agreement and present evidence." *Id. at 7, ¶¶ 13, 14.* He complains that BNSF "did not allow

the dispatcher to appear at the hearing," "did not produce or reveal all the records they had," and "did not produce or allow the train crew to testify," created an "incomplete and flawed investigation record," "brought only the altered, edited tape to Plaintiff's investigation hearing," all of which constitutes "negligence and mismanagement in the conduct of BNSF's investigation [and] its handling of the termination...." *Id. at ¶¶ 15, 16, 22, 23, 24*. These claims could not be resolved in this action without applying and interpreting the CBA.

The state law invoked by Wolfe, M.C.A. § 39-2-701(1) provides:

> A person or corporation operating a railway or railroad in this state is liable for all damages sustained by any employee of the person or corporation in consequence of the neglect of any other employee of the person or corporation or by the mismanagement of any other employee and in consequence of the willful wrongs, whether of commission or omission, of any other employee of the person or corporation when the neglect, mismanagement, or wrongs are in any manner connected with the use and operation of a railway or railroad on or about which the employee is employed. A contract that restricts the liability is not legal or binding.

The Montana Supreme Court has held that a claim for violation of the covenant of good faith and fair dealing is preempted because it is necessarily based on the contract between the parties. *Winslow v.*

*Montana Rail Link, Inc.,* 16 P.3d 992, 997 (Mont. 2000). But in *Winslow*, the court also found that a mismanagement claim was not preempted, explaining:

> [T]he fact that Winslow is an employee covered by a collective bargaining agreement does not necessarily mean that his claim for mismanagement is one requiring an interpretation or construction of that agreement and is therefore preempted by the RLA.
> . . . .
> We determine that the District Court, in concluding that Winslow's claim "requires interpretation of the CBA" and is therefore preempted by the RLA, read too much into the allegations of the complaint. The complaint makes no reference to the CBA or to the rights and remedies accorded Winslow under that agreement. Rather, the complaint alleges that MRL was guilty of "mismanagement or neglect" under § 39-2-703, MCA. The source of the right to be free from mismanagement is state statutory law, § 39-2-703, MCA, and is independent of any negotiated labor agreement. Under the teachings of Norris, the claim is not subject to federal preemption.

*Id.* at 295-96. Here, however, Wolfe's Amended Complaint, as excerpted above, makes clear that he does mention the "labor agreement" and he is challenging the handling of the process conducted pursuant to the CBA. Therefore, unlike *Winslow*, it is clear that the claim for mismanagement is one that will require interpretation or construction of the CBA.

Claims are preempted if "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A." *McCann v. Alaska Airlines, Inc.*, 758 F.Supp. 559, 562 (N.D. Cal. 1991) (citing *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369-70 (9th Cir. 1978)). Claims are preempted when they relate to "abuses of the investigatory process and errors in the hearing procedures." *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369-70 (9th Cir. 1978) (cited in *Veta v. American Airlines, Inc.*, 107 F.3d 878 at * 2 (9th Cir. 1997) (unpublished)).

Although the Ninth Circuit called *Magnuson* into question in *Miller v. AT&T Network Systems*, 850 F.2d 543, 549 (9th Cir. 1988), it remains instructive here because it is consistent with the standard announced in *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 (1994) (cited in *Hawaiian Airlines,* 512 U.S. at 260). It is also consistent with other post-*Hawaiian Airlines* cases that have considered claims that require interpreting terms of a CBA. *See Gore v. Transworld Airlines,* 210 F.3d 944, 950-51 (8th Cir. 2000) (state law negligence claim held preempted

because duty depended upon the terms of the agreement between the parties); *Monroe v. Missouri Pac. RR Co.*, 115 F.3d 514, 518 (7th Cir. 1997) (holding wrongful discharge claim preempted in part because claimant "questions the propriety of his disciplinary hearing as well as the sufficiency of the evidence proffered at that hearing [thus] necessitating the court's interpretation" of the CBA).

In *Allis-Chalmers*, the Court held that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempted a state tort law action for alleged bad faith in handling a claim because the tort claim "is firmly rooted in the expectations of the parties that must be evaluated by federal contract law." 471 U.S. at 217. The Court also noted:

> The parties' agreement as to the manner in which a benefit claim would be handled will necessarily be relevant to any allegation that the claim was handled in a dilatory manner. Similarly, the question whether Allis-Chalmers required Lueck to be examined by an inordinate number of physicians evidently depends in part upon the parties' understanding concerning the medical evidence required to support a benefit claim. These questions of contract interpretation, therefore, underlie any finding of tort liability, regardless of the fact that the state court may choose to define the tort as "independent" of any contract question. Congress has mandated that federal law govern the meaning given contract terms. Since the state tort purports to give life to these terms in a

different environment, it is pre-empted.

*Allis-Chalmers Corp., 471 U.S. at 218-219.* Because Wolfe's claim is tied to alleged abuses of the CBA's investigatory process and errors in the hearing procedures, the Court concludes that they are preempted and should be dismissed.

### 2. Punitive Damages

In light of the Court's conclusions regarding Wolfe's substantive claims, there is no basis for awarding punitive damages. Thus, Wolfe's request that punitive damages be awarded against BNSF should be denied.

## V. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that BNSF's motion for summary judgment *(Court Doc. 47)* be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 29th day of August, 2011.

/s/ Carolyn S. Ostby<br>United States Magistrate Judge